UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE A. BRADY,

    Plaintiff,

v.                                                         Case No. 8:19-cv-1268-T-24 SPF

SHAUN J. BRADY, ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on two motions: (1) the Blue Cross Defendants' Motion to Dismiss (Doc. No.4), which Plaintiff opposes (Doc. No. 5); and (2) Plaintiff's Motion to Remand (Doc. No. 5), which the Blue Cross Defendants oppose (Doc. No. 13). As explained below, Plaintiff's motion is denied, and the Blue Cross Defendants' motion is granted.

**I. Background**

Plaintiff Michelle A. Brady alleges the following in her amended complaint (Doc. No. 1-1): Plaintiff and Defendant Shaun J. Brady ("Mr. Brady") were married in November of 2009 in Massachusetts. Thereafter, Plaintiff was covered under Mr. Brady's health insurance from Defendant Blue Cross and Blue Shield of Massachusetts, Inc., which was provided through Mr. Brady's employment with the federal government.

Plaintiff and Mr. Brady divorced in early 2011, and their divorce agreement stated that Mr. Brady was required to continue to provide and maintain health insurance for Plaintiff as long as his employer provided such coverage and neither Mr. Brady nor Plaintiff had remarried. Later in 2011, Plaintiff moved to Florida.[1] After the divorce and for the next seven years, Defendants

---

[1] Mr. Brady currently resides in Texas.

Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Florida, Inc. (collectively, "Blue Cross") remitted payments to Plaintiff's medical service providers.

In May of 2018, Mr. Brady remarried, and he attempted to add his new wife to his health insurance plan. At that time, Mr. Brady disclosed to his employer that he had divorced Plaintiff in 2011—a fact that he had previously withheld from his employer and Blue Cross. Because Mr. Brady's employer and Blue Cross believed that Mr. Brady was married to Plaintiff from 2011 through 2018, they had provided health insurance coverage for Plaintiff. However, the health insurance plan specifically prohibited a divorced spouse from remaining on an employee's health insurance plan under the same terms as when they were married.

As a result, Plaintiff's health insurance coverage was terminated retroactively to the purported date of the Bradys' divorce.[2] Blue Cross then reversed payments previously made to Plaintiff's medical service providers, and Plaintiff began receiving invoices from her medical service providers seeking payment. To date, Plaintiff's medical service providers have sought nearly $900,000 from her for their prior services.

In April of 2019, Plaintiff filed suit against Mr. Brady and Blue Cross in state court. She asserted the following claims: (1) fraud against Mr. Brady; (2) breach of contract against Mr. Brady; (3) promissory estoppel against Blue Cross and Blue Shield of Massachusetts, Inc.; and (4) promissory estoppel against Blue Cross and Blue Shield of Florida, Inc. On May 23, 2019, Blue Cross removed this case based on the federal officer removal statute and federal question jurisdiction. Plaintiff now moves to remand this case, arguing that the federal officer removal

---

[2]Plaintiff contends that an incorrect, earlier date for the divorce was used when terminating her health insurance.

statute does not provide a basis for removal and that a federal question does not exist. Blue Cross opposes the motion and seeks dismissal of the promissory estoppel claims asserted against them.

## II. FEHBA

Before addressing the motions, background regarding the Federal Employees Health Benefits Act ("FEHBA") is necessary. At all relevant times, Mr. Brady was a federal employee, and his insurance plan was provided under the Federal Employees Health Benefits program. Specifically, Mr. Brady was enrolled in a Service Benefit Plan, which is a health insurance plan for federal government employees and their family members that is governed by FEHBA.

### A. The Service Benefit Plan

Federal employees do not contract directly with Blue Cross for health benefits; instead, they enroll in the Service Benefit Plan through the United States Office of Personnel Management ("OPM") and their federal employing office. The Service Benefit Plan in this case was created by federal government Master Contracts between OPM and Blue Cross and Blue Shield Association ("BCBSA"), pursuant to FEHBA. (Doc. No. 1-7; Doc. No. 1-8). In contracting with OPM, BCBSA acts as an agent for and on behalf of local Blue Cross and Blue Shield companies that administer the Service Benefit Plan in their area. The Bradys' health insurance plan was administered in Massachusetts by Blue Cross and Blue Shield of Massachusetts, Inc. and in Florida by Blue Cross and Blue Shield of Florida, Inc.

FEHBA and the regulations implementing it set forth a comprehensive framework for the supervision and administration of the Service Benefit Plan. Under FEHBA, OPM is vested with the sole authority to contract for the provision of health plans and to determine the benefit

3

structure of each plan. 5 U.S.C. § 8902(a), (d). OPM prescribes the necessary regulations, which includes providing for the beginning and ending dates of coverage of employees, members of their families, and former spouses. 5 U.S.C. § 8913(a), (c). The Master Contracts between OPM and BCBSA state that the following laws and regulations "constitute part of [the Master Contract] as if fully set forth herein": (1) the provisions of Chapter 89 of Title 5 of the United State Code; (2) OPM's regulations set forth in Part 890 of Title 5 of the Code of Federal Regulations; and (3) Chapters 1 and 16 of Title 48 of the Code of Federal Regulations. (Doc. No. 1-7, § 1.4(a); Doc. No. 1-8, § 1.4(a)).

### B. Coverage for Family Members

The regulations provide that a member of one's family includes their spouse and any unmarried, dependant children that are under the age of 22 or disabled. 5 U.S.C. § 8901(5). The regulations provide that coverage for a family member terminates on the date on which he or she ceases to be a family member, which in this case, would be the date of the Bradys' divorce. 5 C.F.R. § 890.304(c)(1). Likewise, the regulations address dis-enrollment of former family members and provide that the enrollee's employing office reviews dis-enrollment decisions. 5 C.F.R. § 890.308.

### C. Payment of Benefits and Review of Decisions

Blue Cross pays health insurance benefits by drawing from the federal government's letter of credit, which means that the federal government is the ultimate payer of benefits. 48 C.F.R. § 1632.170(b). OPM's regulations establish the exclusive remedy for a covered

individual[3] to challenge an insurance carrier's refusal to pay benefits: first, he or she requests reconsideration from the insurance carrier; then he or she files an administrative appeal to OPM; and then he or she seeks judicial review of OPM's decision in federal court. 5 C.F.R. § 890.105(a). A lawsuit to review OPM's denial of health benefits must be brought against OPM and not the insurance carrier. 5 C.F.R. § 890.107(c).

### D. Erroneous Benefit Payments

The Master Contracts applicable to the Blue Cross health insurance plan provide that if a member's claim has been paid in error, Blue Cross must make a prompt and diligent effort to recover the payment from the member or service provider. (Doc. No. 1-7, p. 30, § 2.3(g); Doc. No. 1-8, p. 38; § 2.3(g)). When Blue Cross recovers an erroneous benefit payment, the money is returned to the federal government. 48 C.F.R. § 31.201-5; 48 C.F.R. § 1631.201-70(h). Additionally, Blue Cross can seek reimbursement from the federal government for legal expenses incurred in the litigation of benefit payments. 48 C.F.R. § 1652.216-71(b).

## III. Motion to Remand

In the instant motion, Plaintiff moves to remand this case, arguing that the federal officer removal statute does not provide a basis for removal and that a federal question does not exist. As explained below, the Court finds that the federal officer removal statute provides a basis for removal and this Court's subject matter jurisdiction over this case. Therefore, the Court does not reach Blue Cross' alternative argument of a federal question as a basis for removal.

---

[3]A "covered individual" is defined as an enrollee (*i.e.,* the individual in whose name the enrollment is carried) or a covered family member (*i.e.,* a member of the family of an enrollee with a self-plus-one or a self-and-family enrollment that meets other specified requirements). 5 C.F.R. § 890.101.

Pursuant to 28 U.S.C. § 1442(a)(1), removal is permitted when a person acting under the direction of a federal agency or its officers is sued for actions taken under color of the federal office. "A health plan insurer contracting with a government agency under a federal benefits program is considered a 'person acting under' a federal officer." Anesthesiology Associates of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc., 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005). Blue Cross contends that they are persons acting at the direction of a federal agency (OPM), and they are being sued for their actions taken with respect to the health insurance plan they administer for OPM.

Removal under § 1442(a)(1) is proper when two requirements are met:

> First, the defendant must advance a colorable defense arising out of [his] duty to enforce federal law. That defense need only be plausible; its ultimate validity is not to be determined at the time of removal. . . . Second, the defendant must establish that there is a causal connection between what [it] has done under asserted official authority and the action against [it]. However, the Supreme Court has held that, in a civil suit . . . , it is sufficient for the defendant to show that [its] relationship to the plaintiff derived solely from [its] official duties.

Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1427–28 (11th Cir. 1996)(quotation marks and internal citations omitted).

Blue Cross meets both requirements for removal. First, Blue Cross advances a colorable federal defense—that Plaintiff's claims are preempted.[4] Second, there is a sufficient casual connection between Blue Cross's actions (as dictated by OPM, FEHBA, and the regulations) and Plaintiff's claims (asserting promissory estoppel to create insurance coverage) against Blue

---

[4]In the next section, the Court will explain that the defense of preemption is not just colorable, but it is in fact meritorious.

Cross. Plaintiff seeks relief against Blue Cross for their implicit promise of insurance coverage via their acts of issuing her an insurance card and paying her medical service providers. (Doc. No. 5, p. 7). However, that implicit promise arose as a direct result of Blue Cross administering the health insurance plan under which OPM told Blue Cross that Plaintiff was a covered family member.[5] Furthermore, Blue Cross's relationship with Plaintiff is derived solely from administering the federal health insurance plan; Plaintiff did not contract directly with Blue Cross. Therefore, Blue Cross's removal of this case under § 1442(a)(1) was proper, and Plaintiff's motion to remand on that basis is denied. See Truell v. Blue Cross & Blue Shield of Fla., Inc., 2008 WL 11336248, at *2–3 (M.D. Fla. Mar. 31, 2008)(finding that removal was proper under § 1442(a)(1) when the insurance carrier removed the plaintiff's case that included claims regarding the retroactive termination of the plaintiff's health insurance coverage).

**IV. Motion to Dismiss**

Now that this Court has found that it has subject matter jurisdiction over this case under the federal officer removal statute, Blue Cross seeks dismissal of the promissory estoppel claims asserted against them. Plaintiff contends that by providing her with an insurance card and remitting payments to her medical service providers, Blue Cross promised that they would

---

[5]As alleged in the complaint, Plaintiff's continued coverage after the divorce resulted from Mr. Brady failing to disclose to his government employer or Blue Cross that he had divorced Plaintiff. Furthermore, § 1.5 of the Master Contracts provides that OPM maintains the records from which Blue Cross determines the names of enrollees, and § 2.1(a)(2) provides that the effective date of termination for a person's coverage is determined according to the regulations or by directions of OPM given pursuant to Chapter 89, Title 5 of the United States Code. (Doc. No. 1-7; Doc. No. 1-8). Therefore, until Mr. Brady disclosed his divorce, OPM could not have known that Plaintiff was no longer a covered family member, and thus, OPM could not inform Blue Cross that Plaintiff was no longer covered. Furthermore, Blue Cross was required by the Master Contracts to provide insurance benefits to Plaintiff until it learned that she was no longer covered.

provide her with health insurance coverage. She further contends that she detrimentally relied on the promise, which Blue Cross should have expected, and therefore, Blue Cross should be required to provide coverage during the period in which they now seek to recoup their benefit payments.

Blue Cross argues that the promissory estoppel claims must be dismissed because they are preempted.[6] As explained below, the Court agrees with Blue Cross.

Blue Cross argues that FEHBA expressly preempts Plaintiff's promissory estoppel claims. Specifically, FEHBA provides the following:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1).

Several terms of the Master Contracts are implicated by Plaintiff's promissory estoppel claims. First, Plaintiff argues that Blue Cross's provision of an insurance card to her was an implicit promise of insurance coverage, yet § 2.1(c) of the Master Contracts provides that Blue Cross must issue evidence of insurance coverage. (Doc. No. 1-7; Doc. No. 1-8). Second, Plaintiff argues that when Blue Cross remitted payments to her medical service providers, this was another implicit promise of coverage. However, § 2.2(a) of the Master Contracts dictates that Blue Cross must provide insurance benefits to its members, and § 1.5 provides that OPM maintains the records from which Blue Cross determines the names of enrollees. (Doc. No. 1-7;

---

[6] Blue Cross makes other arguments in support of dismissal that the Court does not reach due to its finding that Plaintiff's promissory estoppel claims are preempted.

Doc. No. 1-8). Third, § 2.4(a) of the Master Contracts provides that coverage is terminated as specified in the regulations, and the regulations provide that coverage for a family member terminates on the date on which he or she ceases to be a family member. (Doc. No. 1-7; Doc. No. 1-8); 5 C.F.R. § 890.304(c)(1). Fourth, Blue Cross's actions of reversing its prior benefit payments that it made to Plaintiff's medical service provides were mandated by the Master Contracts, specifically§ 2.3(g). (Doc. No. 1-7; Doc. No. 1-8). Thus, the acts that form the basis of Plaintiff's promissory estoppel claims were dictated by the Master Contracts, and therefore, any state law action based on those acts (which clearly relates to a health insurance plan) is expressly preempted by § 8902(m)(1). See Maple v. U.S. ex rel. Office of Personnel Management, 2010 WL 2640121, at *3 (W.D. Okla. June 30, 2010)(stating that the plaintiffs' claim for relief for the retroactive termination of health insurance coverage was preempted by § 8902(m)(1)).

OPM's regulations establish the exclusive remedy for relief in this situation. Specifically, the civil enforcement mechanism provides the manner in which a covered individual can challenge Blue Cross's refusal to pay benefits (which in this situation equates to the recoupment of previously paid benefits). 5 C.F.R. § 890.105(a). The steps for challenging the benefits decision are to first request reconsideration from Blue Cross; then file an administrative appeal to OPM; and then seek judicial review of OPM's decision in federal court. 5 C.F.R. § 890.105(a).

Plaintiff argues that because she is no longer a member of Mr. Brady's family due to the divorce, she is not a covered individual and cannot challenge the benefits decision. A "covered individual" is defined as an enrollee (*i.e.,* Mr. Brady) or a covered family member. 5 C.F.R. § 890.101. However, Mr. Brady, as the enrollee, is a covered individual that can pursue relief on

behalf of Plaintiff through the administrative channel. Furthermore, Plaintiff could pursue relief herself if she obtains Mr. Brady's specific written consent to allow her to proceed on his behalf as the covered individual. 5 C.F.R. § 890.105(a)(2). Finally, it is not entirely clear that Plaintiff cannot pursue such relief herself without Mr. Brady's written consent, as she was once a covered individual and she is challenging the termination of her coverage. See Truell, 2008 WL 11336248, at *3 (noting that the plaintiff, an enrollee that had her coverage retroactively terminated, was required to use the civil enforcement mechanism in order to pursue relief relating to the termination of her coverage). Accordingly, Blue Cross's motion to dismiss Plaintiff's promissory estoppel claims based on express preemption is granted.

## V. Remaining Claims

The only claims that remain are Plaintiff's state law fraud and breach of contract claims against Mr. Brady. The Court's basis for subject matter jurisdiction over this case was the federal officer removal statute; diversity jurisdiction did not exist at the time of removal. Even though the Court has dismissed the claims against Blue Cross, the federal contractors, which gave rise to this Court's jurisdiction, the Court still has original jurisdiction over this case. Plaintiff and Mr. Brady are citizens of different states, and the amount in controversy exceeds $75,000. As such, with the dismissal of Defendant Blue Cross and Blue Shield of Florida, Inc., the Court now has diversity jurisdiction over this case.[7] See Jefferson v. Certain Underwriters at Lloyd's London, 658 Fed. Appx. 738, 743 (5th Cir. 2016)(stating that "the propriety of remand in a properly removed case is judged on the basis of the district court's jurisdiction over the claims

---

[7]Even if the remaining parties were not diverse, the Court would have the option of continuing to exercise supplemental jurisdiction over the remaining claims. See Nadler v. Mann, 951 F.2d 301, 306 n.9 (11th Cir. 1992).

remaining at the time of remand, not the time of removal).

## VI. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion to Remand (Doc. No. 5) is **DENIED**.

(2) The Blue Cross Defendants' Motion to Dismiss (Doc. No.4) is **GRANTED**.

(3) The remaining parties are directed to file a joint case management report by *July 30, 2019.*

**DONE AND ORDERED** at Tampa, Florida, this 16th day of July, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record