UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE A. BRADY,

    Plaintiff,

v.                                                  Case No. 8:19-cv-1268-T-24 SPF

SHAUN J. BRADY, ET AL.,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court on Defendant Shaun Brady's Motion to Dismiss. (Doc. No. 14). Plaintiff opposes the motion. (Doc. No. 19). As explained below, the motion is granted.

**I. Background**

Plaintiff Michelle A. Brady alleges the following in her amended complaint (Doc. No. 1-1): Plaintiff and Defendant Shaun J. Brady ("Mr. Brady") were married in November of 2009 in Massachusetts. Thereafter, Plaintiff was covered under Mr. Brady's health insurance ("BCBS") that was provided through his employment with the federal government.[1]

Plaintiff and Mr. Brady divorced in early 2011 while still living in Massachusetts. Their divorce agreement states that Mr. Brady was required to continue to provide and maintain health insurance for Plaintiff as long as his employer provided such coverage and neither Mr. Brady nor Plaintiff had remarried. Later in 2011, Plaintiff moved to Florida. Mr. Brady currently resides in

---

[1] Defendants Blue Cross and Blue Shield of Massachusetts, Inc. and Blue Cross and Blue Shield of Florida, Inc. (collectively, "BCBS") were the Bradys' health insurance providers during the relevant time. Plaintiff's claims against BCBS were dismissed by this Court on July 16, 2019. (Doc. No. 17).

Texas. After the divorce and for the next seven years, BCBS remitted payments to Plaintiff's medical service providers.

In May of 2018, Mr. Brady remarried, and he attempted to add his new wife to his health insurance plan. At that time, Mr. Brady disclosed to his employer that he had divorced Plaintiff in 2011—a fact that he had previously withheld from his employer and BCBS. Because Mr. Brady's employer and BCBS believed that Mr. Brady was married to Plaintiff from 2011 through 2018, they had provided health insurance coverage for Plaintiff. However, the health insurance plan specifically prohibited a divorced spouse from remaining on an employee's health insurance plan under the same terms as when they were married.[2]

As a result, Plaintiff's health insurance coverage was terminated retroactively to the purported date of the Bradys' divorce.[3] BCBS then reversed payments previously made to Plaintiff's medical service providers, and Plaintiff began receiving invoices from her medical service providers seeking payment. To date, Plaintiff's medical service providers have sought nearly $900,000 from her for their prior services.

In April of 2019, Plaintiff filed suit against Mr. Brady in state court, and the case was later removed to this Court. In her amended complaint, Plaintiff asserts two claims against Mr. Brady—fraud and breach of contract.

Plaintiff alleges the following in support of her fraud claim: Under the terms of the

---

[2] However, Plaintiff's insurance coverage may have been able to continue for up to 36 months under the TCC (temporary continuation of coverage) provisions of the Federal Health Benefits Program. The TCC provisions set forth certain time limits for enrollment after a divorce.

[3] Plaintiff contends that an incorrect, earlier date for the divorce was used when terminating her health insurance.

divorce agreement, Mr. Brady agreed to continue to provide Plaintiff with health insurance under his health plan. However, Mr. Brady knew that once he divorced Plaintiff, he could no longer provide her with health insurance under his health plan. Mr. Brady failed to disclose this knowledge and continued to make Plaintiff believe that he was providing her with health insurance until it was retroactively terminated by BCBS. Mr. Brady made these statements for the purpose of misleading and inducing Plaintiff to enter into the divorce agreement. Plaintiff relied on Mr. Brady's representations that she continued to have health insurance to her detriment, as her past medical service providers are seeking reimbursement for their treatment.

Plaintiff's breach of contract claim is based on Mr. Brady's failure to provide her with health insurance and to provide her with at least 30 days' notice prior to the termination of her health insurance, as required by their divorce agreement. In response, Mr. Brady filed the instant motion to dismiss her claims.

## II. Motion to Dismiss

Mr. Brady makes two arguments in support of dismissal: (1) Plaintiff fails to state a fraud or contract claim; and (2) this Court lacks personal jurisdiction over him. As explained below, the Court agrees that this Court lacks personal jurisdiction over Mr. Brady.

This Court is mindful of the following when evaluating personal jurisdiction:

> A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. . . . [Courts] consider two questions in resolving personal jurisdiction: (1) whether personal jurisdiction exists over the nonresident defendant[s] under Florida's long-arm statute, and (2) if so, whether the exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

3

Prunty v. Arnold & Itkin LLP, 753 Fed. Appx. 731, 734 (11th Cir. 2018)(quotation marks and internal citations omitted).

Plaintiff contends that this Court has personal jurisdiction over Mr. Brady under Florida's long-arm statute, because he committed fraud—a tortious act—within Florida. Fla. Stat. § 48.193(1)(a)(2). The flaw in this argument is two-fold. First, to the extent that Plaintiff is asserting a fraudulent inducement claim—that she was fraudulently induced into entering into the divorce agreement—the fraud was committed in Massachusetts.[4]

To the extent that Plaintiff is asserting a fraudulent misrepresentation/concealment of the breach of his obligation to provide her with health insurance, such a claim is not cognizable under Florida law because it is really a repackaged claim that Mr. Brady breached the divorce agreement. Mr. Brady argues that such a fraud claim is not independent of the alleged breach, and as such, it cannot stand. This Court agrees. As explained by one court:

> To state a claim for fraudulent misrepresentation under Florida law, a plaintiff must allege: (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that it was false; (3) intent by the person making the statement to induce another's reliance; and (4) reliance by such other person on the misrepresentation. Notably, where a party is in contractual privity with another, to bring a valid tort claim, the party must establish that the tort is independent of any breach of contact. . . . [D]istrict courts within Florida have held that it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims. With regard to a fraud claim, one court explained that the critical inquiry focuses on whether the alleged fraud is separate and apart from the performance of the contract. . . .Put differently, where the alleged fraudulent misrepresentation is "inextricably intertwined"

---

[4]The Court makes no finding regarding whether Plaintiff has stated a sufficient claim of fraudulent inducement. The only finding that the Court is making relating to such a claim is that assuming that she has stated a sufficient claim of fraudulent inducement, such would not provide a basis for personal jurisdiction over Mr. Brady.

4

> with the performance of a contract, there is no cognizable claim sounding in fraud.

CEMEX Construction Materials Fla., LLC v. Armstrong World Industries, Inc., 2018 WL 905752, at *10–11 (M.D. Fla. Feb. 15, 2018)(internal citations, quotation marks, and footnote omitted).

In CEMEX, the counterclaim-plaintiff Armstrong and counterclaim-defendant CEMEX were parties to a distribution agreement, in which CEMEX agreed not to sell Armstrong's products outside of the designated distribution territory. See id. at * 1–2. Armstrong alleged that CEMEX not only breached the distribution agreement by making sales of Armstrong's product outside of the designated distribution territory, but CEMEX also made fraudulent misrepresentations to Armstrong in order to conceal the sales. See id. at *2–4. As a result, Armstrong asserted breach of contract and fraud/misrepresentation claims against CEMEX. See id. at *7, 10. In finding that the fraud claim should be dismissed, the CEMEX court stated the following:

> Armstrong's purported fraudulent concealment claim fails because the alleged misrepresentations which Armstrong asserts CEMEX used to conceal CEMEX's true actions are inextricably intertwined with its performance of the contract. Indeed, as alleged by Armstrong, it is by virtue of the misrepresentations that CEMEX accomplished the alleged breach of the Distribution Agreement. . . . Armstrong's allegations of fraud are more properly characterized as allegations of fraud in the performance of the contract, and as such the fraud claim premised on those allegations is not cognizable under Florida law.

Id. at 11–12 (citations omitted).

In this case, like the CEMEX case, the alleged misrepresentations that were used to conceal Mr. Brady's true actions are inextricably intertwined with the performance of his

obligations under the divorce agreement. As such, to the extent that Plaintiff is alleging a fraud claim (other than one for fraudulent inducement), such a claim fails under Florida law and thus cannot provide personal jurisdiction over Mr. Brady.

Given that Plaintiff has only argued that this Court has personal jurisdiction over Mr. Brady based on his allegedly fraudulent statements to Plaintiff in Florida regarding her health insurance, the Court finds that it does not have personal jurisdiction over Mr. Brady. Given this finding, Plaintiff asks this Court to dismiss her claims against Mr. Brady without prejudice, so she may re-file her claims in a court with proper jurisdiction. The Court will do so.

**III. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant Shaun Brady's Motion to Dismiss (Doc. No. 14). is **GRANTED** to the extent that the Court finds that it does not have personal jurisdiction over Mr. Brady.

(2) The Court dismisses Plaintiff's claims against Mr. Brady without prejudice, and the Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 21st day of August, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record